641 P.2d 503

STATE of New Mexico, ex rel. John L. HUNING, Edeal Dairy, Inc., Huning Land Trust, Nicholas Duran de Chavez Company and Johanna C. Othart, Plaintiffs-Appellants,

v.

LOS CHAVEZ ZONING COMMISSION, Composed of: J. Phillip Castillo, Jose I. Garcia, Wilma Berlier, Mitzi Smith and Calvin Boliver, and each of them, Defendants-Appellees,

and

BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF VALENCIA, Plaintiff-Appellee,

v.

LOS CHAVEZ ZONING COMMISSION, et al., Defendants,

and

Edeal Dairy, Inc., et al., Cross-Claimants-Appellants.

No. 13612.

Supreme Court of New Mexico.

Feb. 22, 1982.

Keleher & McLeod, Robert H. Clark, John B. Tittmann, Albuquerque, for plaintiffs-appellants.

Thomas C. Esquibel, Dist. Atty., Louis E. Valencia, Chief Deputy Dist. Atty., Los Lunas, for defendants-appellees.

## OPINION

FEDERICI, Justice.

This is an appeal from the District Court of Valencia County. Plaintiff, State ex rel. Huning, et al. (appellants) filed a quo warranto action against defendants (appellees) challenging the validity of the Los Chavez Zoning District. Cross-claimants, Edeal Dairy, Inc., et al., sought a declaratory judgment that the Los Chavez Zoning District is invalid and that Sections 3–21–15 through 3–21–26, N.M.S.A.1978, are unconstitutional. At trial, the cases were consolidated as a quo warranto proceeding. The trial resulted in judgment for defendants against plaintiffs and cross-claimants who now appeal. We reverse.

Appellees sought to form the Los Chavez Zoning District pursuant to Sections 3–21–15 through 3–21–26. Appellants challenge the validity of the district claiming that 51% of the electors in the proposed zoning district did not sign the petition forming the zoning district as required by Section 3–21–18. This section provides in part:

A special zoning district is created in an area outside the boundary limits of an incorporated municipality when:

. . . .

B. at least fifty-one percent of the registered electors residing in the area sign a petition requesting a special zoning district; . . . .

The issue on appeal is whether the petition submitted pursuant to Section 3–21–18 contained 51% of the signatures of the registered electors residing in the proposed zoning district.

With reference to the number of valid signatures on the petition, the record shows that the proposed district encompasses a portion of Precincts 7 and 19 in Valencia County. The petition, pursuant to Section 3–21–18, was filed on February 4, 1976, and contained 479 signatures. Uncontroverted evidence shows that of 479 signatures contained in the petition, 43 are invalid because 8 are duplicate, 2 are illegible and 33 are signatures of unregistered voters. Subtracting 43 from 479, we conclude that the petition contained 436 valid signatures. The question is whether this number of signatures represents 51% of the registered electors in the proposed district.

With reference to the number of registered electors, the record discloses that as of January 26, 1976, the voter lists for Valencia County showed that 907 electors lived within Precincts 7 and 19. Appellees claim that 123 names should be deducted from the 907 figure based on the testimony of two witnesses, Mr. Griego and Mrs. Berlier. Appellants do not challenge the testimony of Mr. Griego that 12 names should be deducted, but they do challenge the testimony of Mrs. Berlier. Mrs. Berlier is a long-time resident of, and former precinct worker in, the area involved. She testified that 111 names appearing on the voter lists for Precincts 7 and 19 should be discounted as persons not residing within the proposed zoning district. Appellants argue that their objections to Mrs. Berlier's testimony were sustained as to 10 electors and that her testimony was insufficient as to 68 additional electors.

As to the 68 electors, appellants argue that Mrs. Berlier testified only that their addresses, as they appeared on the voting lists, were not within the proposed district, or that the individuals appearing on the voting lists had moved out of the proposed district. Appellants claim that this evidence is insufficient to establish "residence" under Section 1–1–7, N.M.S.A.1978, which defines residence in terms of where a voter *intends* his voting residence to be.

We disagree that the Berlier testimony is insufficient. It is obviously difficult to prove intent by direct evidence. Circumstantial evidence of intent is sufficient in this case if it can be said that it amounts to substantial evidence. Evidence is substantial if a conclusion of the trier of fact can be reasonably based upon it. *Grace v. Oil Conservation Commission of New Mexico*, 87 N.M. 205, 531 P.2d 939 (1975). We conclude that the Berlier testimony was substantial evidence under the circumstances of this case. Mrs. Berlier testified from personal knowledge that many persons who

signed the petition did not live within the proposed zoning district. In the absence of any showing to the contrary, it can be reasonably inferred that these persons either never were, or were no longer, voters in the proposed district. At least 101 names to which Mrs. Berlier testified should be deleted. Appellees do not challenge appellants' assertion as to the 10 names upon which appellants' objections were sustained. Including the 12 names to which Mr. Griego objected, we conclude that a total of 113 names should be deleted from the 907 voters said to live in the precincts (111 + 12 − 10 = 113).

An additional issue remains in this case concerning the number of electors residing in the district. Appellants claim that 86 names should be added to the 907, because although these 86 names did not appear on the voter maintenance lists for Valencia County until February 10, 1976, the new voters had actually registered before that date. Appellants argue that five working days were required to have voter list maintenance information placed on computer printouts, and since February 10, 1976 was a Tuesday, the new voters had actually registered as of February 3, 1976, so that the number of electors on February 4, 1976 would be 993.

The evidence as to whether the 86 names should be added to the list of 907 is inconclusive. Two county employees, Mrs. Murphy and Mr. Broschious, testified that "a week" or "five days" were necessary from the time the new voter's names were submitted for data processing to the time they appeared on the computer printout. Yet, the record is not clear whether "a week" means Monday through Friday, or whether "five days" includes weekends. Since February 10, 1976 was a Tuesday, the 86 new voters could have registered as early as February 3, 1976, or as late as February 6, 1976.

■ The burden of proof in these quo warranto proceedings and in this case is upon the appellees. This jurisdiction applies the rule that in a quo warranto proceeding, the burden of justifying usurpation is on the defendant at all times. *State ex rel. Garcia v. Martinez*, 80 N.M. 659, 459 P.2d 458 (1969); *State ex rel. v. Huller*, 23 N.M. 306, 168 P. 528 (1918).

Nowhere does the applicable zoning statute provide for the approval of the petition, or the determination of jurisdictional facts to be made by the county clerk, Board of County Commissioners, or anyone else. Nowhere does the statute provide for a hearing or a determination, judicial or otherwise, that the petition has complied with the statutory requirements. In no sense were either the county clerk or Board of Commissioners obliged to approve or verify the petition. Consequently, the responsibility of determining the validity of the signatures on the petition and the number of registered electors in the area rests upon the trial court and this Court, based upon the evidence presented below.

■ Whether the 86 voters are added to the prior voter registration list of 907 is determinative of the result in this appeal (907 − 113 = 794 and 51% of 794 is 405, which is less than the 436 signatures remaining on the petition; but 907 + 86 − 113 = 880 and 51% of 880 is 449, which is more than the 436 signatures appearing on the petition). Since the record is inconclusive, and since the burden of proof was on appellees, we hold that the Los Chavez Zoning District was invalidly formed because there was failure of proof in showing that the requisite number of signatures (51% of the registered electors residing in the area) appeared on the petition submitted pursuant to Section 3–21–18.

We do not reach the constitutional issue raised in this case as this Court will not rule upon a constitutional question if the merits of the case may otherwise be fairly decided. *Property Tax Department v. Molycorp, Inc.*, 89 N.M. 603, 555 P.2d 903 (1976).

The judgment of the trial court is reversed and the case remanded for the purpose of entry of judgment for appellants invalidating the Los Chavez Zoning District for reasons stated in this opinion.

IT IS SO ORDERED.

EASLEY, C. J., and RIORDAN, J., concur.