This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                    **No. A-1-CA-34766**

**TONYA HOWELL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler Gray, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberley M. Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ATTREP, Judge.**

{1}     Defendant Tonya Howell appeals her conviction of larceny over $500 but

not more than $2,500, contrary to NMSA 1978, Section 30-16-1(D) (2006). Defendant raises five issues on appeal: (1) fundamental error in the jury instructions, (2) insufficiency of evidence to support the guilty verdict, (3) error in the admission of late-disclosed evidence, (4) error in the admission of inadequately-redacted evidence, and (5) ineffective assistance of trial counsel. For the reasons that follow, we affirm.

**BACKGROUND**

{2}    Defendant's conviction stems from an incident in March 2014 when she took an iPhone belonging to Renee Groves and never returned it. Prior to the incident, Groves and Defendant were friends, and Groves let Defendant stay at her home for a period of time. During this time, Defendant was permitted to use a new iPhone 5S Groves had purchased for her children on an existing family plan. Groves did not add Defendant to her phone plan. Defendant and her friend, Steven Schroder, were present when Groves was shopping for the iPhone. Schroder testified that he overheard Groves offer to help Defendant by allowing her to use an extra phone line. Schroder admitted that he never heard Groves say she would buy Defendant the iPhone. Groves testified that she did not give the iPhone to Defendant. Groves told Defendant she could use the phone occasionally, she made this clear to Defendant, and Defendant said she understood. Groves kept the iPhone in a drawer in her living room, although Defendant occasionally carried it

2

around.

{3} Groves' and Defendant's relationship deteriorated when Groves told Defendant that Defendant's daughter was not welcome at Groves' home. On March 28, 2014, Groves kicked Defendant out of her home. When Defendant left, she took a spare key and the iPhone but left the rest of her belongings. Defendant then traveled to Texas. Groves called and asked Defendant to return the iPhone; Defendant said she would do so on March 31, 2014, when she came back from Texas.

{4} When Defendant did not return the phone, Groves reported the incident to law enforcement on April 1, 2014. The responding officer, Officer Norman Bowie, called Defendant using the iPhone number. Defendant told Officer Bowie that Groves let her borrow the iPhone and that she would return the phone that day. When Defendant did not return the phone as promised, Officer Bowie filed a criminal complaint against Defendant, and an arrest warrant was issued.

{5} On April 6, 2014, Groves received a text message from Defendant requesting to come get her belongings from Groves' home and stating, "I have your phone as well[.]" During the text exchange, Groves told Defendant that the matter was "in the hands of the [police.]" Defendant then texted back, stating, "You bought me the phone[.]" Over Defendant's objection, screen shots of the text message conversation between Groves and Defendant were admitted into evidence

with redaction.

{6} When Defendant learned of the outstanding arrest warrant in June 2014, she contacted the investigating officer, Detective Tonia Tiller. During the phone call with Detective Tiller, Defendant said both that Groves gave her the iPhone and that she was supposed to return the phone and never did. Groves never recovered the iPhone.

{7} The jury returned a guilty verdict for larceny over $500, and this appeal followed after entry of the judgment and sentence.

**DISCUSSION**

**I.  The Jury Instructions Did Not Result in Fundamental Error**

{8} Defendant argues that the jury instructions were erroneous because (1) the larceny instruction omitted the essential element of "trespassory taking," and (2) no separate ignorance or mistake of fact instruction was given. Because Defendant did not proffer the instructions she now advances on appeal, or otherwise object to the instructions given, we review these challenges for fundamental error. *See State v. Samora*, 2016-NMSC-031, ¶ 27, 387 P.3d 230. Error is fundamental when the instructions "fail to inform the jurors that the [s]tate has the burden of proving an essential element of a crime and [the reviewing court is] left with no way of knowing whether the jury found that element beyond a reasonable doubt." *Id.* ¶ 29 (internal quotation marks and citation omitted).

4

{9}     In this case, the jury was instructed on larceny consistent with the uniform jury instructions. In particular, the jury was instructed:

> For you to find the [D]efendant guilty of Larceny (Over $500), the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.     The [D]efendant took and carried away a phone, belonging to another, which had a market value over $500;
>
> 2.     At the time she took this property, the [D]efendant intended to permanently deprive the owner of it;
>
> 3.     This happened in New Mexico on or about the 28th day of March, 2014.

*See* UJI 14-1601 NMRA. The jury also received the uniform general criminal intent instruction. *See* UJI 14-141 NMRA.

{10}     Defendant first argues that the larceny instruction omitted the essential element of "trespassory taking." Our Supreme Court, however, already has considered the validity of the larceny jury instruction and, indeed, specifically determined that the concept of "trespassory taking" is covered by the larceny and general intent instructions. *See Lopez v. State*, 1980-NMSC-050, ¶¶ 2-7, 94 N.M. 341, 610 P.2d 745 (holding that the larceny instruction, in conjunction with the general intent instruction, "correctly state the law applicable to larceny").[1] Given

---

[1] The jury instructions at issue in *Lopez*—NMSA 1978, §§ N.M. U.J.I. Crim. 16.00 (larceny), 1.50 (general intent)—are materially identical to the current uniform jury instructions—UJI 14-1601 (larceny) and UJI 14-141 (general intent)—which were given in this case.

this, we are not at liberty to alter or reject the larceny instruction. *See State v. Wilson*, 1994-NMSC-009, ¶ 6, 116 N.M. 793, 867 P.2d 1175 ("The Court of Appeals . . . remains bound by Supreme Court precedent and thus does not have authority to alter an instruction that has been reviewed and ruled upon by th[e Supreme] Court.").

{11}    Defendant next argues it was fundamental error to omit an ignorance or mistake of fact instruction. Defendant contends that the jury could have acquitted her if they found she lacked knowledge of, or had a mistaken belief about, whether she had permission to take the iPhone. "Ignorance or mistake as to a matter of fact or law is a defense if it negatives a mental state required to establish a material element of the crime[.]" *See State v. Nozie*, 2009-NMSC-018, ¶ 34, 146 N.M. 142, 207 P.3d 1119 (internal quotation marks and citation omitted). "[A] defendant in a criminal case is entitled to have the jury instructed upon . . . theories of the case supported by the evidence." *State v. Venegas*, 1981-NMSC-047, ¶ 9, 96 N.M. 61, 628 P.2d 306. "Ordinarily, a defendant is not entitled to a specific instruction where the jury has already been adequately instructed upon the matter by other instructions." *Id.* ¶ 9; *see also State v. Griscom*, 1984-NMCA-059, ¶ 14, 101 N.M. 377, 683 P.2d 59 ("[W]henever an intent instruction involving the defendant's mental state is given, the mistake of fact concept is automatically included and does not merit a separate instruction.").

{12} We conclude that the jury was adequately instructed. The jury was instructed that in order to find Defendant guilty of larceny, they had to find that Defendant took a phone "belonging to another . . . [and a]t the time [Defendant] took [the phone], [she] intended to permanently deprive the owner of it[.]" As the State correctly contends, had the jury accepted that Defendant reasonably believed she had Groves' permission to borrow the phone, then the jury could not have found that Defendant intended to permanently deprive the owner of the phone at the time of the taking.[2] *See Griscom*, 1984-NMCA-059, ¶ 14 (holding that district court did not commit error in denying mistake of fact instruction where instructions given adequately covered intent and the mistake of fact defense). The tendered instructions "adequately define[d] the intent necessary to convict" Defendant of larceny and sufficiently addressed Defendant's claimed ignorance or mistake of fact. *State v. Bunce*, 1993-NMSC-057, ¶ 10, 116 N.M. 284, 861 P.2d 965. We find no fundamental error with the jury instructions.

**II.     Defendant's Larceny Conviction Was Supported by Sufficient Evidence**

---

[2] Defendant additionally contends that the jury could have disregarded the written instructions and followed the State's suggestion in closing that the continuous taking doctrine applies—i.e., that Defendant formed the intent to permanently deprive some time after the taking. This argument is unavailing. *See State v. Benally*, 2001-NMSC-033, ¶ 21, 131 N.M. 258, 34 P.3d 1134 ("We presume that the jury followed the instructions given by the trial court, not the arguments presented by counsel.").

{13} Defendant argues that there was insufficient evidence to support her larceny conviction. Having determined the validity of the instructions, we test sufficiency of the evidence against the jury instructions. *See State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (alterations, internal quotation marks, and citation omitted)). Defendant does not dispute that she took the iPhone on March 28, 2014, or that the iPhone belonged to Groves. Instead, Defendant argues that there was insufficient evidence that Defendant intended to permanently deprive Groves of the iPhone at the time she took the phone.

{14} "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. In that light, we determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Garcia*, 1992-NMSC-048, ¶ 26, 114 N.M. 269, 837 P.2d 862 (internal quotation marks and citation omitted). "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

{15} As stated, the jury was instructed in relevant part that in order to convict Defendant of larceny, the State had to prove beyond a reasonable doubt that "[a]t the time [Defendant] took this property, [she] intended to permanently deprive the owner of it[.]" UJI 14-1601. Defendant argues that the evidence at trial supports a finding that, at the time of the taking, Defendant only intended to borrow the phone, not that she intended to permanently deprive Groves of the phone. "An appellate court[, however,] does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence." *State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285 (internal quotation marks and citation omitted); *see also State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314 ("The fact finder may reject [the] defendant's version of the incident."). Instead, we presume that the jury resolved any conflicting inferences in the State's favor, viewing the evidence as a whole in the light most favorable to the guilty verdict and indulging all reasonable inferences. *Graham*, 2005-NMSC-004, ¶ 13.

{16} Under this deferential standard, sufficient evidence existed to support a finding that Defendant had the requisite larcenous intent. In sum, the jury heard that Defendant took Groves' iPhone out of state the same day that she was kicked out of Groves' home, despite Defendant's acknowledgement that her use would only be occasional. The jury learned that Defendant never returned the iPhone to

9

Groves, despite Defendant telling Groves and law enforcement she would do so. The jury heard that Defendant provided inconsistent statements, to both Groves and law enforcement, about her interest in the phone. Defendant stated at various times that she borrowed the phone and would return it; while at other times, Defendant stated that Groves gave her the phone.

{17} From all the evidence at trial and indulging all reasonable inferences, a rational juror could have inferred that Defendant intended to permanently deprive Groves of the iPhone at the time of the taking. *See State v. Roybal*, 1960-NMSC-012, ¶ 6, 66 N.M. 416, 349 P.2d 332 ("While intent is essential and must be established in larceny cases, it may be inferred by the jury from the facts and circumstances established at the trial."); *see also State ex rel. Huning v. Los Chavez Zoning Comm'n*, 1982-NMSC-024, ¶ 7, 97 N.M. 472, 641 P.2d 503 ("Circumstantial evidence of intent is sufficient . . . if it can be said that it amounts to substantial evidence."); UJI 14-141 ("Whether the defendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which [she] acts, the means used, and [her] conduct and any statement made by [her]." (alterations omitted)).

### III. The District Court Did Not Abuse Its Discretion in Admitting the Text Messages

{18} Defendant next argues that the district court erred in admitting the text message exchange between Defendant and Groves over Defendant's objection. At

10

trial, the State sought the admission of eleven exhibits consisting of screen shots of a text message conversation between Groves and Defendant. Defendant objected on the basis that the text messages had not previously been disclosed. The State maintained that the text messages were disclosed during the preliminary hearing at which Defendant was represented by prior counsel, who worked at the same public defenders' office as did trial counsel, and that the texts were referenced in the criminal complaint. The district court determined that the State adequately disclosed the text messages and overruled Defendant's objection.

{19} Defendant asserts that the State breached its duty under Rule 5-501(A) NMRA, to timely disclose the text messages and that the district court erred in admitting the text messages. "We review a district court's ruling on late discovery for abuse of discretion." *State v. Duarte*, 2007-NMCA-012, ¶ 14, 140 N.M. 930, 149 P.3d 1027. "In order to find an abuse of discretion, we must conclude that the decision below was against logic and not justified by reason." *State v. McDaniel*, 2004-NMCA-022, ¶ 6, 135 N.M. 84, 84 P.3d 701. Defendant bears the burden of proving she was prejudiced by the late disclosure of evidence. *See State v. Ortega*, 2014-NMSC-017, ¶ 43, 327 P.3d 1076.

> In considering whether late disclosure of evidence requires reversal, a reviewing court will consider the following factors: (1) whether the [s]tate breached some duty or intentionally deprived the defendant of evidence; (2) whether the improperly non-disclosed evidence was material; (3) whether the non-disclosure of the evidence prejudiced

11

the defendant; and (4) whether the trial court cured the failure to timely disclose the evidence.

*McDaniel*, 2004-NMCA-022, ¶ 8 (internal quotation marks and citation omitted). "The test for materiality . . . is whether there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Duarte*, 2007-NMCA-012, ¶ 15 (internal quotation marks and citation omitted). The test for determining whether a defendant was prejudiced is "whether the defense's case would have been improved by an earlier disclosure or how the defense would have prepared differently for trial." *Id.* (alteration, internal quotation marks, and citation omitted).

**{20}** Even assuming the State breached its duty to timely disclose the text messages, Defendant has failed to demonstrate materiality or prejudice. Defendant did not argue before the district court that earlier disclosure would have produced a different result or that her defense would have been improved. *See id.* ¶ 19. And on appeal, Defendant makes no showing of materiality, failing entirely to indicate how "the outcome of the trial would have been different had [she] received this information earlier." *Id.* Defendant, instead, argues that she "might" have altered her defense strategy or she "might" have sought additional redaction of the text messages. Such speculation is insufficient to make a showing of prejudice. *See McDaniel*, 2004-NMCA-022, ¶ 6 ("The prejudice must be more than

12

speculative."). Moreover, even if trial counsel was not aware of the text messages, Defendant must have had knowledge of them since she was one of the participants in the conversation. This cuts against any claim of prejudice. *See State v. Harper*, 2011-NMSC-044, ¶ 20, 150 N.M. 745, 266 P.3d 25 (noting that when "the defendant has knowledge of the contents of the unproduced evidence, determination of prejudice is more elusive"). Defendant has failed to meet her burden on materiality or prejudice. As such, the district court did not abuse its discretion in admitting the text messages.

**IV.     The District Court Did Not Commit Plain Error in Admitting the Text Message Without Additional Redaction**

{21}     Defendant further argues that State's Exhibit 10, which depicted a text message Defendant received from Groves, was inadequately redacted to prevent the jury from reading prejudicial information referencing that Defendant was on probation. State's Exhibit 10 was admitted into evidence with portions of the text message redacted with black marker by stipulation of the parties. The text message about which Defendant complains reads in its entirety (with redacted portions struck through):

> The police [are] aware of all this and I talked to the officer yesterday so [you] have stolen property in [your] possession that [you] said [you] would return to the officer that day and that's his words in his report along with the log showing [you] left [New Mexico] ~~without~~

13

~~permission~~ and went to [T]exas ~~without permission from probation office~~.

Defendant complains on appeal that the jury could read through the redacted material and "[t]here is every reason to believe" the jury did so. Defendant, however, cites to no portion of the record indicating the jury in fact read the redacted material.

**{22}** Furthermore, Defendant did not preserve the issue of the adequacy or manner of these redactions and raises this issue for the first time on appeal. We, thus, review this issue for plain error only. *See* Rule 11-103(E) NMRA; *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 ("Under Rule 11-103(D)-(E) NMRA, this Court may review evidentiary questions although not preserved if the admission of the evidence constitutes plain error." (alteration, internal quotation marks, and citation omitted)). "The plain-error rule, however, applies only if the alleged error affected the substantial rights of the accused." *Montoya*, 2015-NMSC-010, ¶ 46 (internal quotation marks and citation omitted). "To find plain error, the Court must be convinced that admission of the [evidence] constituted an injustice that created grave doubts concerning the validity of the verdict." *Id.* (internal quotation marks and citation omitted). As such, "in determining whether there has been plain error, we must examine the alleged errors in the context of the [evidence] as a whole." *Id.* (alteration, omission, internal quotation marks, and citation omitted).

14

**{23}** As discussed above, substantial evidence supported Defendant's larceny conviction. This evidence included, *inter alia*, that Defendant took the iPhone after being kicked out of Groves' home, Defendant never returned the phone despite indicating she would do so on multiple occasions, and Defendant provided inconsistent statements about her interest in the phone. Even if we assume the jury read through the redaction, the probation references were vague and indirect. And there is no indication that the State ever mentioned Defendant's probationary status at trial. Under these circumstances, the admission of the redacted references to Defendant's probationary status, even if seen by the jury, did not "constitute[] an injustice that created grave doubts concerning the validity of the verdict." *Id.* (internal quotation marks and citation omitted). There was no plain error.

## V. Defendant Has Not Made a Prima Facie Showing of Ineffective Assistance of Counsel

**{24}** Defendant last argues that she received ineffective assistance of counsel in violation of the Sixth Amendment because her trial counsel did not learn of the text messages until trial. Defendant contends that, had her attorney reviewed the preliminary hearing as part of his trial preparation, "he would have also discovered a wealth of impeachment evidence." Defendant asserts that "[c]ounsel's failures constituted an unreasonable performance and caused prejudice to [her] defense."

**{25}** In order to make a prima facie case of ineffective assistance of counsel, Defendant must show that "(1) counsel's performance was deficient, and (2) such

15

deficiency resulted in prejudice against the defendant." *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057. To prevail on the prejudice prong, "[a] defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Here, Defendant fails entirely to establish that there is a reasonable probability that the result of the trial would have been different. *See id.*; *see also State v. Martinez*, 2007-NMCA-160, ¶ 19, 143 N.M. 96, 173 P.3d 18 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, we need not consider whether counsel's performance was deficient."). Defendant's bald assertion that she suffered prejudice is not enough. *See State v. Torres*, 2005-NMCA-070, ¶ 18, 137 N.M. 607, 113 P.3d 877 ("[A]n assertion of prejudice is not a showing of prejudice." (internal quotation marks and citation omitted)).

**{26}** Accordingly, we conclude that Defendant has failed to establish a prima facie case of ineffective assistance of counsel and reject her claim. This decision does not preclude Defendant's ability to pursue habeas corpus or other post-sentence relief with respect to her claim of ineffective assistance of counsel. *See State v. Arrendondo*, 2012-NMSC-013, ¶ 44, 278 P.3d 517; *see also* Rule 5-803 NMRA (petitions for post-sentence relief).

16

**CONCLUSION**

**{27}** For the foregoing reasons, we affirm Defendant's conviction.

**{28}** **IT IS SO ORDERED.**

_____
**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

_____
**HENRY M. BOHNHOFF, Judge**

_____
**DANIEL J. GALLEGOS, Judge**